# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 2011-001 |
| ) | |
| ) | |
| MIGUEL ANGEL PASCUAL-PICHARDO, ) | |
| ) | |
| Defendant. ) | |

**Attorneys:**
**Alphonso Andrews, Esq.,**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
 *For the United States*

**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
 *For the Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant's "Motion to Disclose Identity of Confidential Informant" (Dkt. No. 236); Defendant's "Supplemental Memorandum of Law in Support of Defendant's Motion to Disclose Identity of Confidential Informant" (Dkt. No. 239); and the Government's Opposition thereto (Dkt. No. 241). For the reasons discussed below, the Court will grant in part and deny in part Defendant's Motion.

### I.   BACKGROUND

**A.   Procedural Background**

On January 9, 2011, Virgin Islands Police Department ("VIPD") officers conducted a traffic stop and vehicle search of a Jeep Cherokee driven by Defendant in the vicinity of Estate Sunny Acres, St. Croix, United States Virgin Islands. The stop and search followed an extensive

undercover investigation, including recorded telephone conversations with Defendant. During the search, the officers recovered over 200 kilograms of a substance which tested positive for cocaine. Defendant was subsequently indicted on a single count of possession with intent to distribute five kilograms or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Dkt. No. 8). Defendant pleaded not guilty to the charge.

Trial in this matter commenced on July 3, 2012. On July 11, 2012, the jury returned a verdict of guilty on the single count charged, as reflected by the twelve signatures on the verdict form and the announcement of the foreperson. Thereafter, at the request of defense counsel, the courtroom deputy polled the members of the jury. One of the jurors polled stated that the verdict announced by the foreperson did not represent his independent judgment. On Defendant's motion, the Court declared a mistrial on grounds of manifest necessity.

With the then-scheduled retrial date of December 2, 2013 looming,[1] Defendant filed the instant "Motion to Disclose Identity of Confidential Informant" (Dkt. No. 236) on November 25, 2013.[2] The Court heard oral argument on the Motion on November 26, 2013. The Government filed its Response to Defendant's Motion on November 27, 2013 (Dkt. No. 241).

**B.**     **The Government's Evolving Position Regarding the Role of the CI**

The parties are in agreement that at least one Confidential Informant ("CI") played a role in some capacity in the events leading up to Defendant's arrest. However, the Government's representations regarding the CI's role in this matter have continuously changed over the course of these proceedings.

---

[1] The retrial of this case was initially scheduled for May 21, 2013, but was continued on the day of the trial.

[2] The December 2, 2013 trial was subsequently continued because of unresolved issues regarding Defendant's GPS expert. (Dkt. No. 243).

1. **March 2012 Evidentiary Hearings**

At a March 9, 2012 evidentiary hearing, Defendant presented a theory that he had been entrapped by law enforcement agents—specifically that they followed him from Puerto Rico to St. Croix, talked to him on the telephone as undercover agents, gave him a jeep with drugs already in it, and then conducted a traffic stop for the purpose of entrapping him. (*See* Dkt. No. 89 at 10). The Court scheduled two additional evidentiary hearings to address several issues and to allow for a presentation of evidence on the issue of entrapment. (*See id.*). The Court directed the Government to present evidence to refute Defendant's entrapment theory, and specifically requested testimony from the agents in Puerto Rico. (*See id.* at 10–11).

At evidentiary hearings on March 16 and March 20, 2012, the Government presented Homeland Security Investigations ("HSI") Special Agent Jose Lebron Aponte and Immigration and Customs Enforcement ("ICE") Agent Melvin Alvarado Pagan as witnesses. Special Agent Lebron testified that HSI became aware of Defendant's involvement with a drug smuggling organization in Puerto Rico after its undercover agents infiltrated the organization (Dkt. No. 81 at 9:13–17), and that HSI learned through these agents that Defendant was traveling from Puerto Rico to St. Croix in order to smuggle drugs back to Puerto Rico (*id.* at 23:5–9, 58:4–14). The purpose of HSI's investigation in this case, according to Special Agent Lebron's testimony, was to locate the drugs on St. Croix. (Dkt. No. 82 at 50:11–51:5). HSI did not, according to Special Agent Lebron, bring Defendant into the drug smuggling operation. (Dkt. No. 81 at 60:5–8). Special Agent Lebron testified that Defendant came to St. Croix on his own, without assistance from HSI. (*Id.* at 22:23–25) ("He came on himself. We did not arrange for him to come to St. Croix."). Special Agent Lebron further testified that HSI did not conduct surveillance of Defendant coming from Puerto Rico to St. Croix. (*Id.* at 59:17–24).

The agents testified that after Defendant arrived on St. Croix, Agent Alvarado contacted Defendant, "identified himself as a vessel commander," and set up the transportation of cocaine from St. Croix to Puerto Rico. (*Id.* at 9:24–25, 10:2–6; Dkt. No. 82 at 22:2–6). According to Agent Alvarado's testimony, "[D]efendant's role was the coordinator of the criminal organization here in St. Croix, that he was in charge of turning over the drugs to me and to return with me to Puerto Rico so he would come in a safe way." (Dkt. No. 82 at 25:20–24).

2. **The Disclosure of the Existence of a CI**

At trial on July 5, 2012, the Government stated in a sidebar conference that it had utilized one or more CIs in this matter. (Dkt. No. 145 at 21:8–12) ("The jury needs to understand that in the concept of the scheme of drug trafficking investigation, law enforcement agents use under covers, individuals, they use confidential informants, which were used in this case."). Defense counsel stated that it was the first time that he had been informed that a CI played a role in the investigation. (*Id.* at 23:20–24:16). The Government responded in the affirmative to the Court's query, based on the information presented, that the CI "was not intimately involved in the transaction and the investigation" and was "simply how [the means through which] they [the Government agents] got the information to target this particular defendant." (*Id.* at 36:20–37:6).

3. **The Government's July 2012 Filing**

In a July 7, 2012 filing, the Government addressed the existence of a CI. (Dkt. No. 105). The Government conceded that a CI played a role in aiding HSI's infiltration of the drug trafficking organization, and represented that the CI provided information to the CI's handler that:

> 1) the DTO ["drug trafficking organization"] was planning to move a load of cocaine from St. Croix to Puerto Rico; 2) the DTO needed a transporter to accomplish the move and the CI was to assist in securing one; 3) Defendant was

4

the person designated by the DTO to facilitate the delivery of the cocaine to the transporter.

(*Id.* at 1–2). The Government went on to represent that the CI contacted Defendant to inform him that the transporter would contact him, and that the CI's handler then relayed "this information" to Special Agent Lebron. (*Id.* at 2).

In a footnote, the Government stated:

The prosecuting arm of this matter was unaware of any contact between the CI and Defendant until yesterday July 6, 2012. Prior information received by agent Jose Lebron, from the CI's handler, indicated that no such contact occurred. Out of an abundance of caution, Lebron contacted the CI yesterday and learned that the CI did contact Defendant and informed him that he (i.e., Defendant) would be contacted by someone to transport the drugs.

(*Id.* at 2 n.1).

### 4. Trial Testimony on July 10, 2012

At a sidebar conference, Defendant's counsel asserted that the CI bought Defendant's plane ticket from Puerto Rico to St. Croix. (Dkt. No. 148 at 8:9–20). In response, the Government offered to put Special Agent Lebron on the witness stand, representing that Special Agent Lebron would testify that "the confidential informant had not provided the defendant with any plane ticket, or reservation, or money, or anything of that sort." (*Id.* at 41:6–10). Instead, Special Agent Lebron testified that he did not have personal knowledge regarding whether the CI was involved in purchasing Defendant's plane ticket to St. Croix. (*Id.* at 43:20–44:24).

### 5. The Government's Opposition to the Instant Motion

In the Government's Opposition to the instant Motion, filed on November 27, 2013, the Government appears to alter and expand its prior representations of the CI's role in this matter. The Government now represents that "Defendant and another individual approached the CI

5

seeking assistance in transporting drugs from St. Croix to Puerto Rico. He told the CI that he wanted him to meet members of his (CI's) organization." (Dkt. No. 241 at 1).

The Government further represents in its Opposition that the CI "set the price of $1,500 per kilogram to transport the drugs"; the CI gave Defendant money to buy his plane ticket from Puerto Rico to St. Croix; and after Defendant arrived on St. Croix, the CI spoke with him on the phone at least once and exchanged multiple text messages with him. (*Id.* at 1–2). The Government produced a transcript of the text messages on November 7, 2013. (Dkt. No. 217-1, 217–2).[3]

## II. APPLICABLE LEGAL PRINCIPLES

Courts have long recognized the Government's "'privilege to withhold from disclosure the identity of persons who furnish information' regarding illegal activity." *United States v. Johnson*, 302 F.3d 139, 148–49 (9th Cir. 2002) (quoting *Roviaro v. United States*, 353 U.S. 53, 59 (1957)). This is often referred to as the "informer's privilege." *Roviaro*, 353 U.S. at 59. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59.

The privilege, however, is not absolute. *Id.* at 60. If a defendant demonstrates that disclosure "is relevant and helpful" to his defense or is "essential to a fair determination" of his guilt, "the privilege must give way." *Id.* at 60–61. To overcome the Government's privilege, a

---

[3] The Government asserted at the November 26, 2013 Pretrial Conference that it produced these same text messages in Spanish on November 25, 2012, and that the November 7, 2013 production was simply an English translation of the text messages. Defendant's counsel asserted that *he* had "never seen" the text messages before November 7, 2013, but he could not represent definitively that the messages were not included in discovery material previously produced by the Government.

defendant must show a likelihood that the disclosure will be "relevant and helpful" to his defense, rather than merely hoping for such a result. *United States v. Brown*, 3 F.3d 673, 679 (3d Cir. 1993) (citing *Roviaro*, 353 U.S. at 60–61). "The burden is on the defendant to show the need for disclosure." *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981).

In *Jiles*, the Third Circuit noted that disclosure of a confidential informant may be required when "(1) the [informant's] possible testimony [is] highly relevant; (2) it might . . . disclose[] an entrapment; (3) it might . . . throw[] doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged." 658 F.2d at 198–99 (citing *McCray v. Illinois*, 386 U.S. 300, 310–11 (1967); *Roviaro*, 353 U.S. at 63–65).

There is no fixed rule for when disclosure is required, and the *Roviaro* Court stated that once a defendant sets forth a specific need for the disclosure, the court should balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. at 62.

### III. <u>DISCUSSION</u>

Defendant argues that the Government must disclose the identity of the confidential informant ("CI") involved in this case because some of the evidence indicates that one or more CIs were "directing Defendant at relevant times involved in the case" and the CI's "identity and disclosure would be essential to a fair and just trial in this case." (Dkt. No. 237 at 4–5). The Government counters that "Defendant has not met his burden to make the requisite showing that would trigger entitlement to his request." (Dkt. No. 241 at 1). For the reasons that follow, the Court will order the Government to disclose the identity of the CI.

### A. Defendant's Need for Disclosure

The initial step in evaluating whether the Government must disclose the identity of a CI is to determine the need for disclosure that Defendant has alleged. *Jiles*, 658 F.2d 194. The Government argues that Defendant has failed to "specify how disclosure of the CI's identity would assist his defense," and therefore has failed to meet his burden in overcoming the *Roviaro* presumption against disclosure. (*Id.* at 4–5). Therefore, according to the Government, the Court does not need to apply the second part of the *Roviaro* test, which balances the defendant's need against the Government's interest in maintaining confidentiality. (*Id.* at 6).

While the focus of the Court's attention is on the filings currently before the Court, in resolving the issue presented the Court cannot ignore the history of these proceedings. In that regard, entrapment, or the possibility of such a defense, has consistently been raised during these proceedings. It was discussed at all three March 2012 evidentiary hearings as well as multiple times during the July 2012 trial. (*See, e.g.*, Dkt. No. 145 at 22:3–6 (counsel for the Government stating: "Agent Lebron is going to testify that why [sic] they targeted the defendant in the first place, and again, this goes to the entrapment defense."); Dkt. No. 147 at 77:4–7 (counsel for the Government stating: "So I think that's a fair question, Judge, as far as his entrapment defense. His defense that he was somehow coerced into going to pick up the drugs."); Dkt. No. 148 at 39:16–25) (Defendant's counsel stating: "Now, they knew since March, 2012, my defense was entrapment, okay. Now they're admitting that . . . yes, there is a confidential informant who told Mr. Pichardo that someone is going to be calling him."); *id.* at 72:18–79:17 (in which the Court engaged in a colloquy with the Government regarding the relationship between Defendant's request for disclosure of the CI's identity and Defendant's possible entrapment defense)). Defendant requested an entrapment jury instruction at the first trial, but the Court concluded that

he had not presented sufficient evidence to warrant the imposition of an entrapment instruction. (Dkt. No. 149 at 21:14–29:20). Additionally, the possibility of an entrapment defense was discussed at both the June 11, 2013 status conference and the November 26, 2013 pretrial conference.

In the instant Motion, Defendant avers that some of the text messages disclosed by the Government appear to be between Defendant and "two individuals not identified to the case, one or both of whom must be the confidential informant(s)." (Dkt. No. 237 at 4). Further, Defendant argues that the "nature of the text messages suggests that both individuals were directing Defendant at relevant times involved in the case . . . ." (*Id.*). Given the record of the proceedings as it relates to the defense of entrapment, the additional information provided in the Government's Opposition regarding the role of the CI, and Defendant's suggestion, from the text messages, that one or more CIs were directing his actions, the Court finds that Defendant has met the threshold of establishing a need for disclosure. *Jiles*, 658 F.2d at 198 (noting that the Government may be required to disclose a CI's identity when "the possible testimony [is] highly relevant" or "it might . . . disclose[] an entrapment").

That is not to say that a defendant can invoke a possible entrapment defense and defeat the presumption of nondisclosure without providing any evidence of entrapment. *See United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985) ("Where the defendant claims entrapment, he must adduce some evidence of entrapment before the government is called upon to disclose to the defendant [the] identity of an informant . . . .") (citation omitted). Indeed, the case law is clear that more than "mere speculation" that a CI may provide evidence helpful to the defendant is required for disclosure. *See Jiles*, 658 F.2d at 197; *United States v. Day*, 384 F.2d 464, 469 (3d Cir. 1967) (McLaughlin, J., concurring) ("In most situations the accused will demand disclosure

in the hope that the informer's testimony can substantiate his defense. But if disclosure on a mere supposition is required in every instance the interests of law enforcement in combatting the illegal narcotics traffic will be detrimentally affected by the emasculation of its only effective weapon—the informer.").

The defense of entrapment has two elements: "[1] government inducement of the crime, and [2] a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Matthews v. United States*, 485 U.S. 58, 63 (1988). A defendant is entitled to an entrapment instruction when he provides evidence of both elements of the defense from which a reasonable juror could find entrapment. *United States v. Fedroff*, 874 F.2d 178, 181 (3d Cir. 1989) (citing *Matthews*, 485 U.S. at 62).

Without passing judgment on the strength of any possible entrapment defense in this case, or the propriety of any possible jury instruction that may be sought, the Court finds that the specific evidence in the record—namely the CI paying for Defendant's plane ticket; setting the price for transport of the drugs; putting Defendant in touch with undercover agents; and communicating with Defendant via phone call(s) and text messages after he arrived on St. Croix—combined with the piecemeal manner and the seeming indecisiveness with which the involvement of the CI has been revealed by the Government in this case, are enough to demonstrate that Defendant has specified a threshold need for disclosure of the identity of the CI.

**B.** *Roviaro* **Balancing**

*Roviaro* noted that the result of balancing "the public interest in protecting the flow of information against the individual's right to prepare his defense," would be dependent "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" 353

U.S. at 62. The "particular circumstances" of this case include the evolution of the Government's position regarding the CI's role—from Agents Lebron and Alvarado testifying that Defendant came from Puerto Rico to St. Croix on his own, to a CI contacting Defendant to let him know that a transporter would be contacting him, to a CI giving Defendant money for his plane ticket to St. Croix, setting the price for transporting the drugs, and communicating with Defendant via phone conversation(s) and text messages once he was on St. Croix.

The Government briefly addresses the balancing test in its Opposition, asserting that Defendant's need "weighs in at zero" and is accordingly outweighed by "the general policy that releasing the identity of the CI will deter future witnesses from stepping forward." (Dkt. No. 241 at 6). Given the evolving nature of the Government's positions and representations regarding the involvement of the CI, it is not difficult for the Court to conclude that disclosure may have potential benefits to an entrapment defense. *Jiles*, 658 F.2d at 198 (noting that disclosure may be required when "it might . . . disclose[] an entrapment"). With each new bit of information revealed by the Government about the CI, the involvement of the CI has increased. Given the concessions the Government has now made regarding the CI's role in the investigation, and the Government's seeming uncertainty as to the full picture of the CI's role, Defendant is not basing his request for disclosure on a "mere supposition" that it would benefit his defense. *Day*, 384 F.2d at 469. Rather, the Government's piecemeal disclosures have increased the possibility that the CI's testimony is "highly relevant" or "might . . . disclose[] an entrapment." *Jiles*, 658 F.2d at 198.

In arguing for nondisclosure, the Government submits the general policy argument that "releasing the identity of the CI will deter future witnesses from stepping forward." (Dkt. No. 241 at 6); *cf. Jiles*, 658 F.2d at 194 ("This is not a case in which the Government argues, on

general policy bases, that releasing the identity of the informant will deter future witnesses from stepping forward; rather, it is one in which there appears to be a very high risk of physical harm to the particular informant involved.") (citation omitted). While the general policy argument is not insignificant and must be given due consideration, it must be balanced against Defendant's "right to prepare his defense." *Roviaro*, 353 U.S. at 62. Here, the possible entrapment defense and the possible significance of the CI's testimony, together with the Government's apparent uncertainty as to the actual role of the CI—as reflected by its evolving representations—weigh in favor of disclosure.[4] Accordingly, the Court will order the Government to disclose the identity of the confidential informant.

## C.  Defendant's Additional Discovery Requests

In addition to requesting the disclosure of the identity of the CI,[5] Defendant requests additional discovery information, such as: written or oral promises of any benefits to the CI, including promises of immunity, leniency, or preferential treatment; any writings memorializing such promises; any record of payment of local, state, or federal funds to the CI; and any information regarding the CI's prior testimony in any proceeding in which the CI acted as a

---

[4] Further, the Government asserts that the CI was a member of a drug trafficking organization and had responsibilities within it, such as assisting in securing a transporter to move a large quantity of cocaine from St. Croix to Puerto Rico. (Dkt. No. 105 at 2). At least one circuit court has suggested that this type of CI is distinguishable from the kind of witnesses for whom the presumption against disclosure exists to encourage to "step forward." *See, e.g.*, *United States v. McDowell*, 687 F.3d 904, 911 (7th Cir. 2012) (finding that a CI, who was a "high-ranking drug trafficker," "ha[d] little in common with the 'concerned citizens' who report suspected drug crimes in their neighborhoods and require confidentiality."). In *McDowell*, the Seventh Circuit ultimately found that the trial court did not abuse its discretion in denying the defendant's motion for disclosure, because the defendant's argument for disclosure—that it would have supported his duress defense—was "flimsy." *Id.*

[5] Although Defendant initially requested "[t]he names of any and all reporting persons, informants, or witnesses providing information to law enforcement regarding this case," (Dkt. No. 237 at 5), at the November 26, 2013 Pretrial Conference he narrowed this request to one for disclosure of the CI involved in the case.

witness or CI. (Dkt. No. 237 at 5–6). However, the cases upon which Defendant relies for support of the proposition that he is entitled to this information are inapposite because they address the Government's duty to disclose this type of information regarding its trial witnesses for possible impeachment purposes.[6] Here, the Government did not introduce the CI as a witness at the first trial, and avers in its Opposition that it will not call the CI as a trial witness. (Dkt. No. 241 at 6). Accordingly, the Court will deny, without prejudice, Defendant's request for additional discovery information.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion is granted with respect to his request for the Government to disclose the identity of the confidential informant. The Motion is denied with respect to Defendant's request for additional discovery information. An appropriate Order accompanies this Memorandum Opinion.

Date: January 18, 2014                _____/s/_____
                                      WILMA A. LEWIS
                                      Chief Judge

---

[6] *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Smith*, 77 F.3d 511 (D.C. Cir. 1996); *United States v. Shaffer*, 789 F.2d 682 (9th Cir. 1986); *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983); *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980); *United States v. Mayer*, 556 F.2d 245 (5th Cir. 1977); *United States v. Fowler*, 465 F.2d 664 (D.C. Cir. 1972).